**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| FREDERICK MOODY,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF FAIRFIELD and<br><br>JOSEPH KIBBE, individually,<br><br>Defendants. | **Civil Action No. __________**<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Frederick Moody, by and through counsel, brings this action against Defendants Town of Fairfield and Joseph Kibbe and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil-rights action arising from Fairfield Police Officer Joseph Kibbe's use of excessive force against Plaintiff Frederick Moody on September 12, 2024, in violation of Fred's Fourth Amendment right to be free from excessive force and related provisions of Maine law.

2. On the evening of September 12, 2024, Kibbe took Fred into protective custody for a mental health evaluation. Fred was cooperative and went willingly with Officer Kibbe in the back to his police cruiser to spend the night at Thayer Hospital. Fred had committed no crime and was not under arrest. Fred was unarmed, did not pose an immediate threat of serious physical harm to anyone, and was not trying to hurt Kibbe or anyone else.

3. Officer Kibbe inappropriately applied hinged handcuffs much too tightly. Fred repeatedly complained that the restraints were excessively tight and causing significant pain, and he

requested that the handcuffs be loosened or adjusted. Rather than deescalating the situation or loosening the cuffs, Kibbe made the situation worse, drawing his Taser and threatening Fred with it.

4. Thereafter, Kibbe parked the cruiser in a secure garage bay at the hospital. While Fred was handcuffed and lying face down across the rear seat of the cruiser, Kibbe used substantial force and his body weight to slam the cruiser door into Fred's head, causing Fred to sustain a concussion, a laceration on his head, and fractures of his C6 and C7 vertebrae.

## JURISDICTION AND VENUE

5. This action arises under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.

6. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

7. This Court has supplemental jurisdiction over Plaintiff's related Maine-law claim pursuant to 28 U.S.C. § 1367 because that claim arises from the same case or controversy as his federal claims.

8. Venue is proper in the District of Maine pursuant to 28 U.S.C. § 1391 because Defendants reside in Maine and the events giving rise to these claims occurred in Fairfield and Waterville, Maine.

## PARTIES

9. Plaintiff Frederick Moody is an individual residing in Anson, Somerset County, Maine.

10. Defendant Joseph Kibbe was, at all relevant times, a police officer employed by the Town of Fairfield and the Fairfield Police Department.

11. At all relevant times, Kibbe acted under color of state law.

12. Kibbe is sued in his individual capacity.

13. Defendant Town of Fairfield is a municipal corporation and political subdivision of the State of Maine.

14. The Fairfield Police Department is a department of the Town of Fairfield.

## FACTUAL ALLEGATIONS

### A. Roadside Encounter and Restraint

15. On the evening of September 12, 2024, Officer Kibbe approached Fred as he was walking along a roadway and engaged him in conversation.

16. The Fairfield Police Department's incident report describes the matter as "No Crime Involved."

17. Fred has never been charged with a crime relating to this incident.

18. Fred was polite to Kibbe and cooperated with him throughout the encounter.

19. At one point during the conversation Fred began to walk away, at which point Kibbe restrained Fred's hands behind his back using hinged handcuffs and placed Fred in the rear of the police cruiser.

20. During the roadside encounter, Fred asked Kibbe whether he was under arrest, and Kibbe told him that he was not.

21. Fred complained that the handcuffs were excessively tight and were causing him significant pain.

22. In response to those complaints, officers added a second set of handcuffs in an effort to provide additional room.

23. Despite that adjustment, the restraints remained excessively tight and continued to cause Fred significant pain.

24. Fred continued to complain about the restraints and requested that they be loosened or otherwise adjusted.

25. Kibbe transported Fred to Thayer Hospital in the rear of Kibbe's police cruiser.

**B. Events at the Hospital**

26. Upon arriving at the hospital, Kibbe parked the cruiser in a secure ambulance bay.

27. Fred remained restrained in the rear of the cruiser.

28. Fred had been searched and was not armed.

29. Fred was not a threat to anyone.

30. Fred was not under arrest.

31. At the time of the force that caused Fred's serious physical injuries, Fred was handcuffed with his hands behind his back, lying face down across the rear seat of the cruiser, and located in the controlled hospital ambulance bay.

32. Fred was restrained, unarmed, and did not pose an immediate threat of serious physical harm to Kibbe, hospital personnel, or members of the public.

33. Fred again complained of substantial pain from the restraints and asked Kibbe to loosen, adjust, or remove them.

34. Kibbe refused to do so.

35. When Kibbe attempted to close the cruiser door, Fred placed a foot in or near the doorway to prevent the door from closing while he continued asking for relief from the painful restraints.

36. Rather than helping Fred or relieving some of the pain, Kibbe escalated the situation.

37. With assistance from hospital security personnel, Kibbe used physical force to move Fred back into the cruiser, including pressure to Fred's legs and jawline.

38. While Fred remained handcuffed in the rear of the cruiser, Kibbe drew and armed a Taser and placed it directly against Fred's chest.

39. Fred, who was experiencing substantial pain from the restraints, told Kibbe to use the Taser because Fred believed it would hurt less than the restraints.

40. Fred remained handcuffed behind his back and was lying face down across the rear seat of the cruiser.

41. With Fred lying down on the back seat of the cruiser, still handcuffed and unable to get out of the way, Officer Kibbe used all of his weight and intentionally slammed the door of the cruiser into Fred's head so hard that he broke two of Fred's vertebrae, gave Fred a concussion, and cut his head.

42. In addition, Fred suffered nerve damage from the excessive tightness of the handcuffs.

43. Fred was subsequently escorted into the hospital, and he complained of neck pain. He also had a visible laceration to his forehead, which Kibbe photographed.

44. The hospital did diagnostic imaging of Fred's cervical spine the following morning, showing that Office Kibbe had fractured Fred's C6 and C7 vertebrae.

45. Fred required substantial medical treatment as a result of the incident, including emergency transfer to a different hospital for surgical treatment for his cervical fractures.

46. Fred has suffered and continues to suffer damages including physical injury, pain and suffering, emotional distress, medical expenses, lost income and/or impairment of earning capacity, and other damages.

## MAINE TORT CLAIMS ACT NOTICE

47. Fred timely provided written notice of his state-law claim pursuant to 14 M.R.S. § 8107.

48. On May 30, 2025, Fred sent a written notice of claim to the Town Manager of the Town of Fairfield by certified mail and email.

49. The notice identified Fred as the claimant, identified Kibbe as the governmental employee involved, described the September 12, 2024 incident and the basis of the claim, identified Fred's injuries, and stated the monetary damages claimed.

50. The Town received the written notice on June 2, 2025.

51. Fred has satisfied the applicable notice requirements of the Maine Tort Claims Act.

## COUNT I

### 42 U.S.C. § 1983 — FOURTH AMENDMENT EXCESSIVE FORCE
### Against Defendant Joseph Kibbe Individually

52. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

53. Kibbe acted under color of state law throughout the events described above.

54. Fred enjoyed a clearly established Fourth Amendment right to protection against objectively unreasonable and excessive force during his seizure and restraint by law enforcement.

55. Fred was seized by Kibbe within the meaning of the Fourth Amendment from the moment that Kibbe handcuffed him.

56. At the time of the seizure, Fred was not suspected of committing a crime.

57. Fred had been placed into protective custody for purposes of obtaining a mental-health evaluation.

58. Fred was restrained with his hands behind his back.

59. Fred was unarmed and had been searched.

60. Following the seizure, Fred did not attempt to flee.

61. Fred repeatedly informed Kibbe that the restraints were causing significant pain and repeatedly requested that they be loosened, adjusted, or removed.

62. Despite knowledge of Fred's continuing complaints of significant pain, Kibbe continued the painful restraint without justification.

63. At the hospital, while Moody remained handcuffed in the rear of the cruiser, Kibbe drew and armed a Taser and placed it directly against Moody's chest.

64. Kibbe thereafter intentionally used substantial force and his body weight to force the cruiser door closed while Moody was handcuffed behind his back and lying face down across the rear seat. The door struck and compressed Moody's head and/or neck, immediately causing Moody to cry out in pain.

65. When Kibbe struck Fred with the door, Fred was restrained, unarmed, and did not pose an immediate threat to the safety of Kibbe or others.

66. Under the totality of the circumstances, the force used against Fred was objectively unreasonable and excessive.

67. Kibbe's conduct violated Fred's rights under the Fourth Amendment to the United States Constitution.

68. At the time of the incident, it was clearly established that law enforcement officers could not employ significant and gratuitous force against a restrained individual who was not suspected of a crime and posed no immediate threat to the safety of officers or others.

69. An objectively reasonable police officer in Kibbe's position would have understood that the force he used was unlawful.

70. As a direct and proximate result of Kibbe's conduct, Fred sustained the injuries and damages described above.

71. To the extent that Kibbe acted maliciously, wantonly, oppressively, or with reckless or callous indifference to Fred's federally protected rights, Fred is entitled to punitive damages against Kibbe.

WHEREFORE, Plaintiff Frederick Moody requests judgment against Defendant Joseph Kibbe for compensatory damages, punitive damages as permitted by law, reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other relief as the Court deems appropriate.

**COUNT II**

**MAINE COMMON-LAW ASSAULT AND BATTERY (EXCESSIVE FORCE)**
**Against Defendant Joseph Kibbe**

72. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

73. Maine law permits a law-enforcement officer to use only such force as is legally justified under the circumstances.

74. Kibbe threatened Fred with harmful or offensive physical contact, including by drawing and arming a Taser and placing it directly against Fred's chest while Fred remained handcuffed in the rear of the cruiser.

75. Kibbe intentionally restrained and physically controlled Fred, including by maintaining the handcuff restraints despite Fred's repeated complaints of significant pain, applying physical force to move Fred into the cruiser, and using substantial force and his body weight to force the cruiser door closed while Fred remained handcuffed and lying face down across the rear seat, causing the door to strike and compress Fred's head and/or neck.

76. Kibbe also continued to restrain Fred in a manner causing significant pain despite Fred's repeated complaints and requests for relief.

77. Under the circumstances alleged herein, the force employed by Kibbe was excessive and objectively unreasonable.

78. The use of such excessive force was not reasonably encompassed within the scope of any discretion afforded to Kibbe as a law-enforcement officer.

79. Kibbe's excessive use of force therefore exceeded the scope of his lawful discretion and is not protected by discretionary-function immunity under the Maine Tort Claims Act.

80. Kibbe's excessive use of force was in bad faith and Kibbe is not protected by intentional-act immunity under the Maine Tort Claims Act.

81. As a direct and proximate result of Kibbe's conduct, Fred suffered the injuries and damages described above.

82. Kibbe acted with implied or actual malice when he used excessive force.

83. Fred is entitled to recover punitive damages against Kibbe.

WHEREFORE, Plaintiff Frederick Moody requests judgment against Defendant Joseph Kibbe for compensatory damages, punitive damages as permitted by law, costs, pre- and post-judgment interest, and such other relief as the Court deems appropriate.

**COUNT III**

**42 U.S.C. § 1983 — MUNICIPAL LIABILITY BASED ON CUSTOM OR PRACTICE**
**Against Defendant Town of Fairfield**

84. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

85. At all relevant times, Kibbe was employed as a police officer by the Town of Fairfield.

86. The Town maintained written policies governing police use of force.

87. Notwithstanding its written use-of-force policies, Fairfield maintained an actual custom or practice of tolerating excessive or inappropriate uses of force by its officers, including Kibbe.

88. The actual customs and practices of the Fairfield Police Department concerning use of force and its investigation, supervision, discipline, or other corrective response to improper uses of force differed materially from the standards reflected in the Town's written policies.

89. Prior to September 12, 2024, Fairfield had received multiple complaints or otherwise had notice of prior incidents of excessive or inappropriate uses of force by Fairfield police officers, including multiple incidents involving Kibbe.

90. The prior complaints and incidents involving Kibbe were sufficiently numerous or serious to place Fairfield's policymakers and supervisory personnel on notice of a recurring risk that Kibbe would use excessive or inappropriate force against persons with whom he interacted.

91. The records concerning prior complaints, use-of-force incidents, internal investigations, supervisory reviews, disciplinary decisions, and corrective actions are principally within the possession, custody, or control of Fairfield.

92. Notwithstanding notice of prior incidents involving excessive or inappropriate force, Fairfield failed to respond adequately through investigation, supervision, discipline, or other corrective action.

93. Fairfield's failure to respond adequately to known incidents permitted a persistent custom or practice tolerating the use of excessive force by its officers, including Kibbe.

94. The Town's failure to adequately address known prior incidents of excessive use of force amounted to deliberate indifference to the constitutional rights of persons with whom Fairfield police officers would foreseeably interact.

95. Fairfield's deliberate indifference to its custom or practice of the use of excessive force by its officers caused Kibbe to violate Fred's Fourth Amendment rights on September 12, 2024.

96. As a direct and proximate result of Fairfield's unconstitutional custom or practice, Moody suffered the injuries and damages described above.

WHEREFORE, Plaintiff Frederick Moody requests judgment against Defendant Town of Fairfield for compensatory damages, reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other relief as the Court deems appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Frederick Moody respectfully requests that the Court:

A. Enter judgment in his favor and against Defendants on the applicable Counts;

B. Award compensatory damages in an amount determined by the jury;

C. Award punitive damages against Defendant Kibbe to the extent permitted by federal and Maine law;

D. Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

E. Award pre-judgment and post-judgment interest as permitted by law; and

F. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Dated: September 11, 2026

Respectfully submitted,

*/s/ Matthew Bowen*

Bruce W. Hepler, Me. Bar No. 8007
Matthew H. Bowen, Me. Bar No. 006364
Hepler Bowen, LLC
75 Pearl St., Ste. 201

Portland, ME 04101
matthew@heplerbowen.com
(207) 772-2525

*/s/ Benjamin Hartwell*
Benjamin Hartwell Me. Bar No. 006619
Hartwell Legal, PLLC
400 Congress St., Ste. 300 PMB # 1571
Portland, ME 04101
ben@hartwelllegal.law
(207) 800-1919